UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA            :     **SEALED INDICTMENT**
                                    :
      - v. -                        :   **19 CRIM 760**
                                    :
YANLIANG LI,
      a/k/a "Jerry Li," and         :
HONGWEI YANG,
      a/k/a "Mary Yang,"            :    USDC SDNY
                                         DOCUMENT
                                    :    ELECTRONICALLY FILED
             Defendants.                 DOC #: _____
- - - - - - - - - - - - - - - - - - X    DATE FILED: _____
                        **COUNT ONE**

(Conspiracy to Violate the Foreign Corrupt Practices Act)

The Grand Jury charges:

## Relevant Persons and Entities

1.    At all times relevant to this Indictment,

"Company-1" was a multilevel marketing company that sold health

care, personal care, and other products in more than 90

countries around the world, including China.  Company-1 was

headquartered in Los Angeles, California and maintained a class

of securities pursuant to Section 12(b) of the Securities

Exchange Act of 1934, which traded on the New York Stock

Exchange.  Company-1 was required to file periodic reports with

the United States Securities and Exchange Commission (the "SEC")

under Section 15(d) of the Securities Exchange Act.  Company-1

was an "issuer" as that term is used in the Foreign Corrupt

1

Practices Act ("FCPA"), Title 15, United States Code, Sections 78dd-1(a) and 78m.

2. At all times relevant to this Indictment, Company-1 conducted business operations in China through a group of wholly-owned subsidiaries based in China (collectively, "China Subsidiary"). China Subsidiary acted as a division of Company-1 rather than a separate and independent entity. Company-1 was a holding company that did not enter into employment contracts with any individuals. Rather, Company-1's employees had employment agreements with Company-1's various wholly-owned subsidiaries, and many employees of Company-1's wholly-owned subsidiaries, including employees of China Subsidiary, were treated as employees of Company-1 and were agents of Company-1.

3. China Subsidiary's books, records, and accounts were consolidated into the financial statements that Company-1 filed with the SEC. Consequently, China Subsidiary's expenditures were dispositions of Company-1's assets, and the business that China Subsidiary obtained and retained ultimately benefited Company-1.

4. Company-1 operated as a multi-level marketing business, including in the United States, but multi-level marketing was prohibited under Chinese law. Chinese law did, however, permit a company to engage in "direct-selling" --

2

selling a company's products through independent sales representatives -- subject to certain requirements. In particular, as relevant here, before engaging in direct-selling in any Chinese province, Chinese law required a company to obtain a direct-selling license from national authorities and local authorities in that province. China Subsidiary received direct-selling licenses from several Chinese provinces starting in or about March 2007. By in or about 2016, China Subsidiary was responsible for approximately twenty percent of Company-1's worldwide net sales, which exceeded $4 billion.

5. At all times relevant to this Indictment, China Subsidiary's External Affairs department ("EA") was responsible for interfacing with Chinese governmental agencies and Chinese government-owned media entities on behalf of Company-1 in China. EA employees frequently entertained Chinese government officials at meals and other events and provided gifts to Chinese government officials. Between in or about 2007 and in or about 2016, China Subsidiary reimbursed EA employees more than $25 million for entertaining and gift giving to Chinese Government officials.

6. From in or about 2004 through in or about December 2007, YANLIANG LI, a/k/a "Jerry Li", the defendant, was the Director of Sales and/or Sales Vice President at China Subsidiary. From in or about December 2007 through in or about

3

April 2017, LI was the Managing Director of China Subsidiary. In that position, he was Company-1's most senior employee in China and primarily responsible for many of China Subsidiary's day-to-day operations, including sales. From in or about December 2012 through in or about February 2017, LI also held the title of Senior Vice President at Company-1. LI, among other things, traveled to Company-1's corporate headquarters in the United States to meet with Company-1 senior executives; received promotions determined by Company-1's senior executives; engaged in regular reporting to Company-1's senior executives at corporate headquarters; and received Company-1 stock and cash incentives tied to the value of Company-1 stock as part of his compensation. At all times relevant to this Indictment, LI was an "employee" and "agent" of an issuer as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

7.    At all times relevant to this Indictment, HONGWEI YANG, a/k/a "Mary Yang," the defendant, was a high-level executive at China Subsidiary and the head of EA. YANLIANG LI, a/k/a "Jerry Li," the defendant, was YANG's direct supervisor. YANG, among other things, traveled to Company-1's corporate headquarters in the United States to meet with Company-1 senior executives; had her performance reviewed by, and received an award from, Company-1's senior executives; engaged in regular reporting to Company-1's senior executives at corporate

4

headquarters; and received cash incentives tied to the value of Company-1 stock as part of her compensation. At all times relevant to this Indictment, YANG was an employee and agent of an issuer as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

8.    At all times relevant to this Indictment, "CC-1," a co-conspirator not named as a defendant herein, was an employee of China Subsidiary with responsibility for certain aspects of China Subsidiary's finances and internal accounting controls. CC-1 reported directly to Company-1's corporate management, which, among other things, was involved in reviewing CC-1's performance and determining CC-1's compensation, including CC-1's payment of Company-1 stock and cash incentives tied to the value of Company-1 stock. As such, CC-1 was an employee and agent of an issuer as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

9.    At all times relevant to this Indictment, various Chinese provincial and central levels of the Ministry of Commerce (collectively, "MOFCOM") were responsible, at least in part, for issuing licenses required for companies, such as China Subsidiary, to conduct direct selling in China. MOFCOM was a "department" and "agency" of a foreign government, as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-1(f)(1)(A).

5

10. At all times relevant to this Indictment, various Chinese provincial and central levels of the State Administration for Industry and Commerce (collectively, "AIC") were responsible, at least in part, for enforcing compliance with Chinese laws applicable to direct-selling companies, such as China Subsidiary. AIC had the authority to conduct investigations into direct-selling companies and to pursue and impose fines and other penalties against direct-selling companies, such as China Subsidiary, that it deemed not to be in compliance with applicable laws. AIC was a "department" and "agency" of a foreign government, as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-1(f)(1)(A).

11. At all times relevant to this Indictment, China Economic Net, a media company in China that published articles about business and other issues in China, was owned and controlled by an agency or department of the Chinese government, and performed a function of the Chinese government. China Economic Net was an "instrumentality" of a foreign government, as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(f)(1)(A).

## The Scheme to Pay Bribes and Circumvent Internal Accounting Controls

12. From at least in or about 2007 through in or about February 2017, YANLIANG LI, a/k/a "Jerry Li," and HONGWEI

6

YANG, a/k/a "Mary Yang," the defendants, and others known and unknown, including CC-1, participated in a scheme to pay bribes and to circumvent Company-1's internal accounting controls. The scheme involved, among other things, bribing Chinese government officials to obtain and retain business and other benefits for Company-1; obtaining reimbursement from Company-1 relating to the illicit bribes through fraudulent reimbursement requests; and circumventing Company-1's internal accounting controls so that the bribery and the profits derived from it would continue.

13. More specifically, YANLIANG LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, and others known and unknown, including CC-1, paid and agreed to pay bribes to Chinese government officials, including officers and employees of MOFCOM, AIC, and China Economic Net, for the purpose of obtaining, retaining, and increasing Company-1's business in China by, among other things, (1) obtaining and retaining China Subsidiary's licenses to operate as a direct-selling enterprise in provinces throughout China; (2) corruptly influencing Chinese governmental investigations into China Subsidiary's compliance with Chinese laws applicable to direct-selling enterprises; and (3) corruptly influencing Chinese state-owned and state-controlled media for the purpose of removing negative media reports about China Subsidiary.

7

14. In order to carry out the scheme, YANLIANG LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, and others known and unknown, including CC-1, obtained reimbursement for the bribes from China Subsidiary through false expense claims designed to conceal the true nature of the expenditures at issue. In doing so, LI, YANG, and others known and unknown, including CC-1, circumvented Company-1's internal accounting controls related to EA's expenditure on gifts and entertainment for Chinese government officials. These internal accounting controls, among other things, prohibited the payment of bribes; established limits on the value, frequency, and nature of expenditures on government officials; and required EA employees to provide receipts and other specific information, including the names of the government officials involved, to obtain approval and reimbursement for their expenditures. LI, YANG, and others known and unknown, including CC-1, agreed to, and did, submit and approve fraudulent reimbursement requests, obtain reimbursement for those fraudulent requests, and conceal their fraud from Company-1's Internal Audit department.

15. For example, in or about December 2006, YANLIANG LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, discussed LI's approval of giving "red envelopes" -- i.e., cash gifts -- to AIC officials, and obtaining

8

reimbursement from China Subsidiary for these red envelopes through fraudulent invoices.

16.  In or about January 2007, during a time in which China Subsidiary had a pending license application with MOFCOM, YANLIANG-LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, discussed that YANG had "taken care of" a particular MOFCOM official before YANG had to address questions from that official.  LI stated, "[T]he money works well on him!"[1] China Subsidiary received the license from MOFCOM in or about March 2007.

17.  In or about February 2007, YANLIANG LI, a/k/a "Jerry Li," the defendant, instructed an EA supervisor to tell two EA employees to falsely submit reimbursement requests.

18.  In or about March 2007, YANLIANG LI, a/k/a "Jerry Li," the defendant, asked HONGWEI YANG, a/k/a "Mary Yang," the defendant, if she agreed to make bribe payments of 35,000 yuan to various AIC officials, including 10,000 yuan to an official whom LI identified as an AIC Deputy Director, for the purpose of minimizing future penalties against China Subsidiary.  YANG responded, "Okay," so long as their colleague could "guarantee this . . . to be effective."  LI then said, "I was thinking it

---

[1]    The statements attributed to the defendants in paragraphs 15 through 24 of this Indictment were made in Mandarin and have been translated into English.

would be better to spend money beforehand than spend money afterwards. This money is a small sum after all, and if we were to be penalized, the figure will be much greater."

19. In or about September 2010, YANLIANG LI, a/k/a "Jerry Li," the defendant, in order to prevent the scheme from being detected by Company-1's Internal Audit department, directed CC-1 to provide certain instructions to another colleague, and added, "Don't use the company's email address . . . I'm afraid it won't be good for you, right?"  LI and CC-1 then agreed to conceal information from Internal Audit about their expense fraud. CC-1 said, "Of course, some stuff can't be talked about . . . things like me switching receipts and so forth, no need to mention it." LI responded, "Right, no need to talk about that."

20. In or about April 2012, HONGWEI YANG, a/k/a "Mary Yang," the defendant, told YANLIANG LI, a/k/a "Jerry Li," the defendant, that an EA supervisor based in Harbin province had purchased round-trip airline tickets for a senior AIC official and his wife in Harbin province. In response, LI warned YANG to be careful that she and her colleagues do not get caught.

21. In or about September 2012, HONGWEI YANG, a/k/a "Mary Yang," the defendant, told YANLIANG LI, a/k/a "Jerry Li," the defendant, about an issue that China Subsidiary was facing with AIC in Shanghai. YANG then told LI that EA had spent

approximately 20,000 yuan on a shopping trip and a spa visit for a senior AIC official, his daughter, and her classmates in Shanghai.  That expenditure violated, among other things, Company-1 policies and controls prohibiting entertaining relatives of government officials.

22.  In or about November 2012, HONGWEI YANG, a/k/a "Mary Yang," the defendant, told YANLIANG LI, a/k/a "Jerry Li," the defendant: "[T]he son of [a senior AIC official in Chifeng province] is studying at [a Chinese University].  They have a thing about going to a work unit for an internship, they require reviews from the places where he did the internships.  Our company is on his list of internships.  I don't know why.  His dad saw that and asked us if our company could help him out and provide his son with a review . . . and affix our company's stamp."  LI responded, "Sure, no big deal."

23.  In the six-month period between in or about July 2012 and in or about December 2012, HONGWEI YANG, a/k/a "Mary Yang," the defendant, received approximately $772,433 in reimbursement for purportedly entertaining 4,312 government officials at 239 meals, or more than one meal per day.  YANLIANG LI, a/k/a "Jerry Li," the defendant, regularly received and reviewed reports from Company-1's Internal Audit department showing the purported expenditures by YANG and EA on

11

entertaining government officials, including these 239 purported meals.

24.   In or about April 2013, HONGWEI YANG, a/k/a "Mary Yang," the defendant, told YANLIANG LI, a/k/a "Jerry Li," the defendant, that she had met with an official at China Economic Net who previously had refused to withdraw certain articles about China Subsidiary.   YANG told LI that she said to the official, "if you destroy[] us, where could you get money?" YANG further told LI that after the official "ate what he should eat, drank what he should drink, and used what he should use," the official had agreed to withdraw the articles.   LI responded, "You have done a great job!"

25.   Between in or about September 2015 and in or about October 2016, YANLIANG LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, and others known and unknown, approved reimbursement of 920,000 yuan for the purported purchase of gifts from a particular vendor.   These gifts, which were purportedly for Chinese government and media officials, were fruits and vegetables from a farm near Yantai, the city where LI and YANG were from and a city where China Subsidiary was licensed to do business.   LI, and in some instances YANG, approved reimbursement to YANG and other China Subsidiary EA employees for receipts showing more than 30 tons

12

of produce purchases -- without any documentation indicating that any produce was actually shipped.

26.    YANLIANG LI, a/k/a "Jerry Li," the defendant, furthered the scheme and concealed the scheme by, among other things, routinely creating false records and certifications disclaiming any knowledge of fraud or circumvention of internal accounting controls.  For example, from at least in or about 2008 to in or about February 2017, on a quarterly and annual basis, LI signed certifications titled "Statement Regarding Facts and Circumstances Relating to Exchange Act Filings," which LI caused to be sent to Company-1's U.S. headquarters.  In these certifications, which Company-1 relied upon in the preparation of its public filings with the SEC, LI falsely certified that "nothing came to my attention that made me question the effectiveness of [Company-1's] disclosure controls and procedures," and that "[I am] not aware of  .  .  .  any fraud, whether or not material, that involves management or other employees who have a significant role in [Company-1] internal controls."

27.    YANLIANG LI, a/k/a "Jerry Li," the defendant, in furtherance of the scheme to pay bribes and circumvent internal accounting controls, made false statements in sworn investigative testimony to the SEC on or about October 20 and 21, 2016.  In particular, when presented with evidence,

13

including audio recordings, of his participation in the scheme, LI falsely denied any knowledge of paying bribes or circumventing Company-1's internal accounting controls. In truth and in fact, and as set forth above, LI was well aware of, participated in, and endorsed these practices by China Subsidiary employees.

28. During the period relevant to this Indictment, YANLIANG LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, each participated in more than ten in-person and online trainings related to Company-1's anti-fraud and anti-corruption policies. Furthermore, LI and YANG both certified repeatedly that they understood and would adhere to Company-1's Code of Business Conduct and Ethics, which, among other things, required compliance with the FCPA.

### Statutory Allegations

29. From at least in or about 2007 though at least in or about February 2017, in the Southern District of New York and elsewhere, YANLIANG LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, to violate the FCPA, in violation of Title 15, United States Code, Sections 78dd-1, 78m(b)(2)(B), 78m(b)(5), 78ff(a), and 78ff(c)(2)(A).

30.   It was a part and object of the conspiracy that YANLIANG LI, a/k/a "Jerry Li," the defendant, being an employee and agent of an issuer which had a class of securities registered pursuant to the Securities and Exchange Act of 1934, to wit, Company-1, and HONGWEI YANG, a/k/a "Mary Yang," the defendant, being an employee and agent of such issuer, and others known and unknown, would and did willfully and corruptly make use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offer, gift, promise to give, and authorize the giving of a thing of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (i) influencing an act and decision of such foreign official in that foreign official's official capacity; (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such foreign official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use that foreign official's influence with a foreign government and instrumentality thereof to affect and influence acts and decisions of such government and instrumentality, in order to assist such issuer, to wit, Company-1, in obtaining and

15

retaining business for and with, and directing business to any person, to wit, Company-1, China Subsidiary, and others, in violation of Title 15, United States Code, Section 78dd-1.

31. It was a further part and object of the conspiracy that YANLIANG LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, and others known and unknown, would and did willfully and knowingly circumvent a system of internal accounting controls at Company-1, an issuer with a class of securities registered pursuant to the Securities and Exchange Act of 1934 that was required to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that (i) transactions were executed in accordance with management's general and specific authorization; (ii) transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles and any other criteria applicable to such statements, and to maintain accountability for assets; (iii) access to assets was permitted only in accordance with management's general and specific authorization; and (iv) the recorded accountability for assets was compared with the existing assets at reasonable intervals and appropriate action was taken with respect to any differences, in violation of Title 15, United States Code, Sections 78m(b)(2)(B) and 78m(b)(5).

16

## Overt Acts

32.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about January 2007, YANLIANG LI, a/k/a "Jerry Li," the defendant, ratified a bribe payment by HONGWEI YANG, a/k/a "Mary Yang," the defendant, in connection with a pending China Subsidiary license application with MOFCOM.

b.   In or about February 2007, YANLIANG LI, a/k/a "Jerry Li," the defendant, instructed an EA supervisor to tell two employees to falsely re-submit requests for reimbursement.

c.   In or about March 2007, YANLIANG LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, approved bribe payments of 35,000 yuan to various Chinese government officials, including 10,000 yuan to an official whom LI identified as an AIC Deputy Director.

d.   In or about February 2013, YANLIANG LI, a/k/a "Jerry Li," the defendant, falsely certified, in a "Statement Regarding Facts and Circumstances Relating to Exchange Act Filings" that, in the preceding fiscal quarter, "nothing came to my attention that made me question the effectiveness of [Company-1] disclosure controls and

17

procedures," and that "[I am] not aware of  . . . any fraud, whether or not material, that involves management or other employees who have a significant role in [Company-1] internal controls." LI further caused this false "Statement Regarding Facts and Circumstances Relating to Exchange Act Filings" to be sent by email to Company-1 personnel in Los Angeles, California.

e.    In or about April 2013, YANLIANG LI, a/k/a "Jerry Li," the defendant, ratified a bribe payment by HONGWEI YANG, a/k/a "Mary Yang," the defendant, in connection with YANG's attempt to suppress negative media reporting about China Subsidiary by China Economic Net.

f.    In or about October 2016, YANLIANG LI, a/k/a "Jerry Li," the defendant, in sworn testimony before the SEC in New York, in sum and substance, falsely denied having knowledge of China Subsidiary's employees paying bribes or circumventing Company-1's internal accounting controls.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(Perjury)

The Grand Jury further charges:

33.    The allegations set forth in paragraphs one through 28 and 32 of this Indictment are repeated and realleged as if fully set forth herein.

18

34.    In or about 2013, the SEC opened a formal investigation into Company-1 for violations of the federal securities laws.

35.    On or about October 20 and 21, 2016, YANLIANG LI, a/k/a "Jerry Li," the defendant, testified under oath before the SEC in New York, New York in connection with the SEC's investigation of Company-1. At the outset of his sworn testimony, LI, who was represented at such testimony by attorneys, acknowledged that he had reviewed a written notification from the SEC that willfully giving false testimony, or willfully concealing a material fact, would constitute a federal crime, and that he did not have any questions about such notification.

36.    It was material to the SEC to ascertain, among other things, the means of communications used by YANLIANG LI, a/k/a "Jerry Li," the defendant, and other employees of Company-1 to communicate regarding the activities of China Subsidiary. Accordingly, the SEC asked LI whether (i) he had a personal e-mail account, and (ii) whether he used any e-mail account other than his Company-1 e-mail account. LI falsely stated, "No," in response to both questions.

37.    In truth and in fact, YANLIANG LI, a/k/a "Jerry Li," the defendant, had a personal email account (the "LI Gmail Account"); LI had used the "LI Gmail Account" throughout 2016;

19

and LI had sent multiple e-mails from the LI Gmail Account approximately sixteen days prior to his testimony before the SEC. LI had used the LI Gmail Account for, among other things, correspondence related to his work at China Subsidiary, and for correspondence with Company-1 competitors in China and the United States.

38. For example, in or about August 2013, YANLIANG LI, a/k/a "Jerry Li," the defendant, sent an e-mail on the LI Gmail Account to HONGWEI YANG, a/k/a "Mary Yang," the defendant, attaching a lengthy article describing anti-corruption investigations by the U.S. Department of Justice (the "DOJ") and the SEC related to bribery in China.

39. In or about May 2015, YANLIANG LI, a/k/a "Jerry Li," the defendant, instructed an individual at a Company-1 competitor in the United States to contact him on the LI Gmail Account because "I don't want to use the company e-mail to talk about [the competitor's] business." LI continued to send e-mails from the LI Gmail Account to the same individual through in or about early October 2016. LI also sent additional emails from the LI Gmail Account to the same individual within a week of completing his SEC testimony in or about late October 2016.

40. In or about early October 2016, YANLIANG LI, a/k/a "Jerry Li," the defendant, sent an e-mail from the LI Gmail Account to a different individual who worked at a

different Company-1 competitor. LI attached to that e-mail an internal China Subsidiary document that, among other things, contained detailed forecasts regarding Company-1's projected financial performance in China.

41. During his sworn testimony before the SEC on or about October 20, 2016, the SEC also asked YANLIANG LI, a/k/a "Jerry Li," the defendant, whether he had offered any payment to any government officials at MOFCOM or AIC, and whether he was aware of any such payments offered by anyone at China Subsidiary. In response, LI, in sum and substance, falsely denied having knowledge of China Subsidiary's employees paying bribes or circumventing Company-1's internal accounting controls.

42. During his sworn testimony before the SEC on or about October 21, 2016, the SEC played for YANLIANG LI, a/k/a "Jerry Li," the defendant, audio recordings of LI, including (a) a recording from in or about 2006 on which LI and HONGWEI YANG, a/k/a "Mary Yang," the defendant, discussed LI's approval of giving "red envelopes" -- i.e., cash gifts -- to AIC officials, and (b) a recording from in or about March 2007 on which LI and YANG agreed to make bribe payments of 35,000 yuan to various Chinese government officials, including 10,000 yuan to an official whom LI identified as an AIC Deputy Director. After the recordings were played, LI, in sum and substance, again

21

falsely denied having knowledge of China Subsidiary's employees paying bribes or circumventing Company-1's internal accounting controls.

## Statutory Allegation

43.   On or about October 20 and 21, 2016, in the Southern District of New York and elsewhere, YANLIANG LI, a/k/a "Jerry Li," the defendant, having taken an oath before a competent tribunal, officer, and person, in a case in which a law of the United States authorized an oath to be administered, that he would testify, declare, depose, and certify truly, willfully and contrary to such oath stated a material matter which he did not believe to be true, to wit, LI, during sworn testimony before the SEC in connection with the SEC's investigation of Company-1, gave the following false underlined testimony, among other false statements:

Q:   Do you have a personal e-mail account?

A:   No.

Q:   Do you use any e-mail accounts other than your work e-mail?

A:   No.

        *       *       *

Q:   Have you offered any payment to any official at [AIC]?

A:   No.

22

        Q:    Have you ever offered any payments to any
                official at MOFCOM?

        A:    <u>No</u>.

        Q:    Are you aware of any such payments offered
                by anyone at [China Subsidiary]?

        A:    <u>As far as I know, no</u>.

(Title 18, United States Code, Sections 1621 and 2.)

## COUNT THREE

(Destruction of Records in Federal Investigations)

The Grand Jury further charges:

44.    The allegations set forth in paragraphs one through 28, 32, and 34 through 42 of this Indictment are repeated and realleged as if fully set forth herein.

45.    In or about 2013, a federal grand jury investigation in the Southern District of New York was opened into Company-1 for violations of federal criminal law.

46.    From in or about 2012 to in or about 2016, YANLIANG LI, a/k/a "Jerry Li," the defendant, received multiple notices from Company-1's attorneys informing him of his obligation to retain all Company-1 documents dating back to at least January 1, 2007 in connection with, among other things, pending U.S. governmental investigations and potential litigation.    Those directives remained in place at least through February 2017.

23

47.   On or about January 20, 2017, Company-1 stated, in a public filing with the SEC, that, in sum and substance, the SEC had requested documents and other information related to Company-1's anti-corruption compliance in China; Company-1 was undertaking its own review of that subject; and Company-1 had discussed these matters with the DOJ.   YANLIANG LI, a/k/a "Jerry Li," the defendant, received e-mails in or about late January 2017 that informed him of the pending SEC and DOJ investigations.

48.   On or about February 11, 2017, YANLIANG LI, a/k/a "Jerry Li," the defendant, was informed he would be interviewed in March 2017 by Company-1's attorneys in connection with an internal investigation into potential misconduct at China Subsidiary.

49.   A few days later, on or about February 17, 2017, LI installed an application (the "Wiping Application") onto his Company-1-issued laptop computer (the "LI Laptop"), which enabled a user to erase files in a manner that would render the deleted files unrecoverable.   That same day, LI deleted approximately 200 files from the LI Laptop using the Wiping Application, many of which had file names associated with LI's work at China Subsidiary.

24

## Statutory Allegation

50.   In or about February 2017, in the Southern District of New York and elsewhere, YANLIANG LI, a/k/a "Jerry Li," the defendant, knowingly altered, destroyed, mutilated, concealed, covered up, falsified, and made a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, and in relation to and contemplation of such matters and cases, to wit, LI, while aware of pending U.S. governmental investigations, destroyed computer files with the intent to impede, obstruct, and influence the investigations into a scheme involving bribes to Chinese officials for the benefit of Company-1, matters within the jurisdiction of the DOJ and the SEC.

(Title 18, United States Code, Sections 1519 and 2.)

### FORFEITURE ALLEGATION

51.   As a result of committing the offense alleged in Count One of this Indictment, YANLIANG LI, a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the

25

commission of the offense charged in Count One of this
Indictment, including but not limited to a sum of money in
United States currency representing the amount of proceeds
traceable to the commission of said offense.

### Substitute Asset Provision

52.  If any of the above-described forfeitable
property, as a result of any act or omission of YANLIANG LI,
a/k/a "Jerry Li," and HONGWEI YANG, a/k/a "Mary Yang," the
defendants:

a.  cannot be located upon the exercise of due
diligence;

b.  has been transferred or sold to, or
deposited with, a third person;

c.  has been placed beyond the jurisdiction of
the Court;

d.  has been substantially diminished in value;
or

e.  has been commingled with other property
which cannot be subdivided without difficulty;
it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), and Title 28, United States
Code, Section 2461(c), to seek forfeiture of any other property

26

of the defendants up to the value of the above forfeitable

property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Sections 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

10/22/19

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

ROBERT ZINK
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

27

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

**YANLIANG LI,**
a/k/a "Jerry Li," and
**HONGWEI YANG,**
a/k/a "Mary Yang,"

Defendants.

---

### SEALED INDICTMENT

19 Cr. _____

(15 U.S.C. §§ 78dd-1, 78m(b)(2)(B), 78m(b)(5), 78ff(a),
78ff(c)(2)(A); 18 U.S.C. §§ 371, 1519, 1621, & 2.)

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

ROBERT ZINK
Chief, Fraud Section, Criminal
Division, U.S. Department of Justice

_J. Tarran Cl._          _10/22/19_
               Foreperson

---

Oct. 22. 19
Filed Sealed Indictment.